GASTON v BECKER

Docket No. 50200. Submitted October 16, 1980, at Detroit.—Decided December 15, 1981.

Yvonne Gaston, individually, and as next friend of Sam McIntosh, brought an action against Ernest Becker, Robert DeMarte, Richard A. Steudle, and the ·Cherry Hill School District for damages arising out of: acts committed by Ernest Becker, Sam McIntosh's teacher, against Sam McIntosh, negligence of the remaining defendants arising out of the screening, hiring, and supervision of Becker, and the vicarious liability of the remaining defendants for Becker's conduct under the doctrine of *respondeat superior.* DeMarte, Steudle, and the district moved for summary judgment on the ground that the plaintiff failed to state a claim upon which relief could be granted. Wayne Circuit Court granted the motion, Joseph G. Rashid, J. The plaintiff appeals. *Held:*

1. The trial court properly granted the motion on the ground that the hiring and supervision of teachers is a governmental function, immune from tort liability, and that this immunity extends to the superintendent and the school principal because they were acting within the scope of their employment.

2. The trial court erred in granting the motion as to the claim of vicarious liability of the district based on the doctrine of *respondeat superior.* The record reveals that a rational finder of fact could conclude that Sam McIntosh could have believed that Becker was acting within the scope of his employment when he allegedly assaulted and battered him. Thus,

REFERENCES FOR POINTS IN HEADNOTES

[1] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 40.
Modern status of doctrine of sovereign immunity as applied to public schools and institutions of higher learning. 33 ALR3d 703.
Personal liability of public school officers or other employees for negligence. 32 ALR2d 1163.
Tort liability of public schools. 86 ALR2d 489.
[2] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 94.
[3-6] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 95, 96.

because such acts would fall outside the scope of Becker's employment and would not be immune from liability, the district could be held to be vicariously liable.

3. The trial court properly held that neither the superintendent nor the principal could be held to be vicariously liable for Becker's acts. Becker was an agent of the district only.

Affirmed in part, reversed in part, and remanded.

D. E. HOLBROOK, JR., J., concurred in part and dissented in part. He would agree that the district was immune from liability for the hiring and supervision of Becker because such activity is a governmental function. However, he would hold that the trial court erred in extending the immunity to the superintendent and the principal because their duty to exercise their supervisory powers reasonably, where breached, would bar the raising of the defense of governmental immunity and that the determination as to whether such a breach occurred in either instance is for the trier of fact. He also would agree that vicarious liability could lie against the district, but not the superintendent or the principal. He would affirm in part, reverse in part, and remand.

OPINION OF THE COURT

1. GOVERNMENTAL IMMUNITY — SCHOOL DISTRICTS — NEGLIGENCE.

A public school district is immune from liability for negligence in the performance of an operation specifically related to education qua education, including negligence in the screening, hiring, and supervision of a teacher (MCL 691.1407; MSA 3.996[107]).

2. GOVERNMENTAL IMMUNITY — SCHOOL DISTRICTS — SUPERINTENDENTS — SCHOOL PRINCIPALS — NEGLIGENCE.

A public school district superintendent or a school principal, in the performance of his duties, who acts within the scope of his employment is immune from liability for negligence.

3. GOVERNMENTAL IMMUNITY — RESPONDEAT SUPERIOR.

A governmental unit may be liable for its agent's misconduct under the doctrine of respondeat superior where it is determined that the agent acted outside the scope of his employment and thus is not protected by the doctrine of governmental immunity and where the agent's actions could be viewed as being within the scope of his apparent authority.

4. GOVERNMENTAL IMMUNITY — RESPONDEAT SUPERIOR — SCHOOL DISTRICTS — SUPERINTENDENTS — SCHOOL PRINCIPALS — TEACHERS.

A public school district superintendent or a school principal is

not liable for the torts of a teacher under the doctrine of *respondeat superior* because a teacher is an agent of the school district, as is the superintendent or the principal, and is not an agent of either the superintendent or the principal, and, thus, both are immune from liability for the teacher's acts under the provision of the governmental immunity statute (MCL 691.1407; MSA 3.996[107]).

PARTIAL CONCURRENCE AND PARTIAL DISSENT BY
D. E. HOLBROOK, JR., J.

5. GOVERNMENTAL IMMUNITY — SCHOOL DISTRICTS — SCHOOL PRINCIPALS — NEGLIGENCE.

*A public school principal has a duty to exercise his supervisory powers reasonably so as to minimize injury to students in his charge, including his powers of direct control over and supervision of the conduct of teachers while engaged in their teaching function, and where the supervision is determined to have been performed negligently he may not be immune from all liability.*

6. GOVERNMENTAL IMMUNITY — SCHOOL DISTRICTS — SUPERINTENDENTS — NEGLIGENCE.

*Negligence of a public school principal cannot be imputed to a superintendent merely because he is in a supervisory position; however, acts of personal negligence in failing to investigate alleged tortious conduct of a principal may render the superintendent liable for injury to students arising from the principal's conduct.*

*Strefling, Hayden & Brode, P.C.,* for plaintiff.

*Buchanan, Ogne & Jinks, P.C.* (by *James W. Stuart),* for defendants.

Before: BRONSON, P.J., and D. E. HOLBROOK, JR., and R. M. RANSOM,* JJ.

BRONSON, P.J. Plaintiff, Yvonne Gaston, appeals as of right from an order granting summary judgment for defendants DeMarte, Steudle, and Cherry Hill School District (hereinafter defendants), pursuant to GCR 1963, 117.2(1), based on the govern-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

mental immunity statute, MCL 691.1407; MSA 3.996(107).

Plaintiff's complaint arose out of alleged repeated, slanderous remarks and assaults and batteries by a teacher, defendant Becker, on her son, Sam McIntosh. Yvonne Gaston, individually and as her son's next friend, commenced this action against Cherry Hill School District, its superintendent, the principal, and the teacher.

Only Counts II and III are pertinent to this appeal. Count II alleges defendants' negligence in the screening, hiring, and supervision of Becker. Count III alleges defendants' vicarious liability for Becker's conduct under the doctrine of *respondeat superior*. The trial court found that the defense of governmental immunity barred Counts II and III.

I

We agree with Judge HOLBROOK's partial dissent, *infra,* that the school board is immune from negligence in the hiring and supervision of defendant Becker. However, we disagree with the partial dissent to the extent that it implies that any function carried out as part of the operation of a public school is an activity leaving the school district without liability because of the doctrine of governmental immunity. We are not sure that the panel of this Court which decided *Deaner v Utica Community School Dist,* 99 Mich App 103; 297 NW2d 625 (1980), really meant to hold that every incident of a public school's operation constitutes a governmental function. Both Judge HOLBROOK's partial dissent in this case and the majority opinion in *Churilla v School Dist for City of East Detroit,* 105 Mich App 32; 306 NW2d 381 (1981), cite *Deaner* for this proposition, however. The dissent in *Churilla* centered on Justice MOODY's

views concerning governmental immunity as expressed in *Parker v City of Highland Park,* 404 Mich 183; 273 NW2d 413 (1978), and *Perry v Kalamazoo State Hospital,* 404 Mich 205; 273 NW2d 421 (1978).[1] In *Parker, supra,* 200, Justice Moody stated:

> "To delineate a complete and balanced definition of governmental function within a simplistic format would be presumptuous. However, as a basic guideline, the crux of the governmental essence test should be founded upon the inquiry whether the purpose, planning and carrying out of the activity, due to its unique character or governmental mandate, can be effectively accomplished only by the government. *Unless liability would be an unacceptable interference with government's ability to govern, activities that fall outside this perimeter, although performed by a government agency, are not governmental functions and therefore not immune."* (Emphasis added.)

The majority in *Churilla* and Judge Holbrook impliedly in this case analyzes Justice Moody's position as an all-or-nothing approach. That is, either all of the governmental unit's operational activities are immune from tort liability or none are. We believe, however, that the emphasized portion of Justice Moody's opinion in *Parker* supports the notion that the specific activities complained of and performed by the governmental agency are of paramount importance to resolving the immunity question and not simply the governmental unit's overall purpose. Thus, in *Churilla,*

[1] We perceive Justice Moody's position on governmental immunity as the key to understanding how the Supreme Court would resolve this issue. Justices Levin, Fitzgerald, and Kavanagh have taken the position that the day-to-day operation of a school is not a governmental function. Conversely, Chief Justice Coleman, Justice Ryan, and Justice Williams have disagreed. See *Galli v Kirkeby,* 398 Mich 527; 248 NW2d 149 (1976).

the dissent concluded that an extracurricular school football program is not a "uniquely governmental" function nor school district liability arising from injuries sustained during such a program "an unacceptable interference with government's ability to govern". We agree with the *Deaner* panel, however, that the government's pervasive role in education and the inadequacy of private schools' ability to provide free and universal education makes a public school's operations, when specifically related to education *qua* education, immune from liability. In the instant case, we believe that the hiring and supervision of teachers is a function that is the essence of government in the sense used by Justice MOODY. Public education obviously cannot be carried out without the hiring and supervision of teachers. Thus, we agree that the school district is immune from liability for the acts of negligence pled in this case.

## II

We disagree with Judge HOLBROOK's analysis concerning the potential liability of the superintendent and principal. In our opinion, four members of the Supreme Court would hold them entitled to the cloak of the school district's immunity from suit. In *Bush v Oscoda Area Schools,* 405 Mich 716; 275 NW2d 268 (1979), the Supreme Court dealt with the problem of a superintendent's and principal's liability for negligence. Justice MOODY, joined on this point by Chief Justice COLEMAN, stated that a superintendent and principal were immune from liability for ordinary negligence. Justice WILLIAMS basically took the same position, except that he analyzed the problem as whether the injurious acts were *ultra vires.* There is no doubt that the supervision of a teacher by a

principal or superintendent is not an *ultra vires* act even if negligently performed. Justice RYAN, joined by Chief Justice COLEMAN, would have held the school district and individual defendants to have been immune from liability under any of the theories advanced based on the doctrine of governmental immunity and the inapplicability of any of the statutory exceptions.

Instead of attempting to divine the impact of *Bush* on this case, Judge HOLBROOK's partial dissenting opinion notes the confused state of Supreme Court precedent and analyzes the problem in accordance with other opinions from this Court distinguishing ministerial and discretionary acts. If the acts complained of are ministerial only, the individual defendants would not be immune from suit. See *Cook v Bennett,* 94 Mich App 93; 288 NW2d 609 (1979), and *Vargo v Svitchan,* 100 Mich App 809; 301 NW2d 1 (1980). We note Judge BASHARA's partial dissent in *Cook* in which he observes that the governmental immunity statute[2] does not distinguish between discretionary and ministerial acts. Relying on Justice WILLIAMS' opinion in *Bush,* Judge BASHARA contends that the proper test to apply is merely whether the principal and superintendent were acting within the scope of their employment. If so, they cannot be held liable.

We are inclined to agree with Judge BASHARA's view. However, in our opinion, to adopt this position requires some comment on Justice MOODY's statement in *Bush* that the individual defendants, who were held immune from liability, were engaged primarily in the exercise of "discretionary

---

[2] MCL 691.1407; MSA 3.996(107).

activities". Justice MOODY's opinion at least suggests that the discretionary-ministerial dichotomy does indeed have continuing vitality.

It is our belief that Justice MOODY's subsequent opinion in *Lockaby v Wayne County,* 406 Mich 65, 83-84; 276 NW2d 1 (1979), shows that he, like Justice WILLIAMS, is really concerned with whether the individual defendants were acting within the scope of their employment as opposed to whether their activities were discretionary. In *Lockaby,* Justice MOODY stated:

"However, plaintiff fails to state a cause of action against the defendants under Count II of his complaint. The operation of a county jail is essentially a governmental function. The county is, therefore, immune under this claim. See *Parker, supra; Perry v Kalamazoo State Hospital,* 404 Mich 205; 273 NW2d 421 (1978). In addition, the officers and employees of the county, while acting within the scope of their employment maintaining a jail, primarily are performing essential public duties. Thus, they are immune from alleged negligent actions or selection of personnel. See *Bush v Oscoda Area Schools,* 405 Mich 716; 275 NW2d 268 (1979)." *Id.,* 84.

As can be seen, Justice MOODY did not give the slightest hint that a distinction between discretionary and ministerial activities was important to his decision. We believe his reference in *Bush* to "discretionary activities" had no significance to his holding. Instead, Justice MOODY was merely recognizing the extensive executive and limited judicial authority of the individual defendants in *Bush.* Consequently, under the standards set forth in *Cook, supra,* 100, we believe the majority there reached the wrong result in finding the principal's functions to have been ministerial only.

### III

We agree with Judge HOLBROOK's conclusion that under certain circumstances a governmental unit may be liable under the doctrine of *respondeat superior* for an agent's intentional misconduct. Each of the four opinions in *McCann v State of Michigan,* 398 Mich 65; 247 NW2d 521 (1976), implies as much.

In the instant case, plaintiff alleges that her son was choked and beaten on several occasions by defendant Becker without "justification or provocation". Additionally, plaintiff avers that her son was slurred by defendant Becker without provocation. These epithets included the following: "nigger", "dumb", "immature", "helpless", "black liar", and "homosexual". These allegations, if proven, involve activity outside the exercise or discharge of a governmental function. Thus, the doctrine of governmental immunity would insulate neither Becker nor the school district from liability.

Only after it has been determined that the doctrine of governmental immunity does not protect the governmental unit from liability does any question of vicarious liability based upon *respondeat superior* arise. As Judge HOLBROOK's opinion notes, only if plaintiff's son reasonably could have viewed Becker's actions as within the scope of his apparent authority could the school district be liable on a *respondeat superior* theory. It is this aspect of the case which we are most troubled by. Ultimately, we do not believe that any factual development can arise which could justify the finder of fact in concluding that the racial and sexual slurs alleged to have occurred here were

within the apparent scope of Becker's employment. As concerns the remainder of the verbal assaults and the use of physical force, however, we think it is conceivable that a rational finder of fact could conclude that plaintiff's son believed Becker was acting within the apparent scope of his employment.

Finally, we agree with Judge HOLBROOK that neither the superintendent nor principal can be held liable for Becker's torts under the doctrine of *respondeat superior.*

## IV

To summarize our views, we believe that the order granting summary judgment in favor of the principal and superintendent was correctly entered on the basis of governmental immunity. We further believe that defendant school district cannot be held liable for its alleged negligence because of the doctrine of governmental immunity. We also believe, however, that the school district is potentially liable on a *respondeat superior* theory. However, to prevail on this theory, plaintiff must prove that unprovoked and unjustified verbal or physical assaults were used by defendant Becker and that plaintiff's son believed the use of this force was within the scope of Becker's employment.

Affirmed in part, reversed in part, and remanded for trial.

R. M. RANSOM, J., concurred.

D. E. HOLBROOK, JR., J. *(concurring in part; dissenting in part).* The question of whether the operation of a school is a governmental function

has been the subject of considerable judicial scrutiny in Michigan. This is not surprising in view of the diverse approaches taken by the seven Michigan Supreme Court justices to resolve questions raised by the doctrine of governmental immunity. Consequently, a divergence has developed in this Court on how to apply recent Supreme Court decisions on governmental immunity. Although a unity in shaping the doctrine of governmental immunity in Michigan is preferable, I must disagree with certain aspects of the majority opinion.

I

I first address the question of whether the school district is immune from suit for its own negligence in allegedly failing to exercise due care in the hiring and supervision of Mr. Becker. The law as to what constitutes governmental immunity for some years has been in a state of flux. I am aided by appellate court opinions which have begun to construe language in the governmental immunity statute. MCL 691.1401 *et seq.;* MSA 3.996(101) *et seq.* I agree with the analysis by a panel of this Court in *Deaner v Utica Community School Dist,* 99 Mich App 103; 297 NW2d 625 (1980), that the operation of a public school constitutes a governmental function. In *Deaner,* the application of the common-law test by Justices COLEMAN, RYAN, and WILLIAMS would require a finding of immunity for school districts. In addition, the operation of a school district presents factors that would make such activity "governmental" under Justice MOODY's broader statement of the governmental essence test. See also *Churilla v School Dist for City of East Detroit,* 105 Mich App 32; 306 NW2d 381 (1981), and *Smith v Mimnaugh,* 105 Mich App 209; 306 NW2d 454 (1981).

Since the function at issue in this case is governmental, I next must determine whether the specific acts complained of were done in the exercise or discharge of that function. See *Antkiewicz v Motorists Mutual Ins Co,* 91 Mich App 389; 283 NW2d 749 (1979). In this case, the activity complained of is the screening, hiring, and supervision of school personnel. I find this to be within the exercise or discharge of a governmental function. *Bozarth v Harper Creek Board of Education,* 94 Mich App 351, 353; 288 NW2d 424 (1979), citing *Galli v Kirkeby,* 398 Mich 527; 248 NW2d 149 (1976) (WILLIAMS, J.). Hence, I conclude that plaintiff has not stated an actionable claim against the district for liability arising from its own negligence and that summary judgment was properly granted.

This two-tiered approach insures that an underlying activity which is found to be a governmental function, in this case education, does not cloak with immunity all acts not in the exercise or discharge of that function.

II

I next consider whether the superintendent or the principal is immune from suit for the alleged negligence of each in the hiring and supervision of Mr. Becker. The Supreme Court has not reached a consensus on the proper method to employ for determining whether public employees are protected by governmental immunity. See *Bush v Oscoda Area Schools,* 405 Mich 716; 275 NW2d 268 (1979). In absence of recent guidance, I follow other panels of this Court and employ the widely utilized distinction between ministerial and discretionary acts. See *O'Toole v Fortino,* 97 Mich App

797, 811; 295 NW2d 867 (1980), *Cook v Bennett,* 94 Mich App 93; 288 NW2d 609 (1979). Thus, my analysis centers on whether the hiring and supervision of teachers falls within the superintendent's or principal's discretionary or ministerial powers.

Since almost any act involves some discretion, the distinction between ministerial and discretionary acts is one of degree. Prosser, Torts (4th ed), § 132, p 990. Discretionary acts are those of a legislative, executive, or judicial nature. *Sherbutte v City of Marine City,* 374 Mich 48, 54; 130 NW2d 920 (1964). Ministerial acts occur where the public employee has little decision-making power during the course of his performance, but rather his conduct is delineated. *Cook, supra,* 100.

In *Vargo v Svitchan,* 100 Mich App 809; 301 NW2d 1 (1980), and *Cook,* it was held that even though the supervisory powers of a school principal are incident to a public function, he has the duty to exercise those powers reasonably in such a way as to minimize injury to students in his charge. Where the principal negligently performs this duty, governmental immunity does not operate to insulate him from all liability. Principal DeMarte has a duty to exercise supervisory powers reasonably so as to minimize injury to his students. The principal of the school maintains direct control over all activities and conduct of teachers while engaged in their teaching function. Moreover, the plaintiff alleges that principal DeMarte was negligent because he failed to investigate or take action upon receiving notice of Becker's acts. Therefore, if school teacher Becker was, in fact, improperly supervised, the defendant principal could bear direct responsibility.

However, in *Vargo,* the Court found the superintendent entitled to protection of the governmental immunity statute. This case is distinguishable from *Vargo.* Here we are able to discern, in the complaint, allegations of personal neglect on the part of the superintendent. The possible negligence of the principal cannot be imputed to the superintendent merely because he was in a supervisory position. *Id.,* 818. The essence of the plaintiff's allegations is that Mr. Steudle was negligent in his personal supervision over other school employees. Plaintiff alleges that defendant Steudle failed to investigate complaints made concerning Becker's alleged tortious behavior and thus failed to prevent harm to students.

Accordingly, as to the individual defendants, I would hold that the lower court erred in granting summary judgment. I note that this only removes a defense and does not impose a liability. A full trial still would be forthcoming where plaintiff would be required to prove her allegations by a preponderance of this evidence. My opinion in no way addresses the actual merits concerning the alleged negligence of these defendants.

## III

The next question is whether vicarious liability lies against the defendant school district under the doctrine of *respondeat superior.* Under *respondeat superior:*

"The employer is also liable for the torts of his employee if 'the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation'. 1 Restatement Agency, 2d, § 219(2)(d), p 481." *McCann v*

*State of Michigan,* 398 Mich 65, 71; 247 NW2d 521
(1976) (Kavanagh, C.J.).

The question as to whether the protection af-
forded a school district under the governmental
immunity statute extends to liability under the
doctrine of *respondeat superior* is presently unset-
tled in Michigan. This issue, under the present
statute, was first addressed by the Michigan Su-
preme Court in *McCann.* The question in *McCann*
was whether a state mental hospital, some of the
employees of which allegedly put a newspaper
publisher out of business through pressures on
advertisers and subscribers, was shielded by gov-
ernmental immunity from possible vicarious liabil-
ity. In three opinions, four justices remanded to
determine whether there was vicarious liability.

Justices Fitzgerald, Coleman, and Lindemer
found that the hospital employees' tortious activity
was personally motivated, was not within the
scope of their employment, and was not performed
in furtherance of any legitimate business of defen-
dants. Accordingly, they held that the defendants
were not liable under the doctrine of *respondeat
superior.* This holding was an application of *re-
spondeat superior* as applied to the unique facts of
*McCann* and not an analysis that *respondeat supe-
rior* precludes state liability.

"Our determination that the hospital officials acted
outside of their scope of authority does not automati-
cally absolve the state from vicarious liability. The
general proposition that vicarious liability may be im-
puted to the master for intentional torts committed by
his servant when the servant's purpose, however mis-
guided, is wholly or partly to further the master's
business remains viable. However, we perceive a dis-
tinction between furthering the legitimate goal of pro-
viding care and treatment to the mentally ill and

insulating the hospital from public disclosure of alleged acts of mismanagement in the conduct of their business." *Id.*, 87.

Later the same year, in *Galli*, Justices KAVANAGH, LEVIN, and FITZGERALD held that a school board did not enjoy immunity against a claim of vicarious liability because the day-to-day operation of a school is not a governmental function.

Justices WILLIAMS and RYAN voted to remand the case to determine whether the school board is liable under the doctrine of *respondeat superior.* They did not consider the issue of vicarious liability since it was not raised or briefed.

Justices COLEMAN and LINDEMER held that the statute grants immunity to a school district from tort liability in *all* cases in which it is acting within its governmental function. They stated that if the Legislature finds it better public policy to exclude governmental units from immunity where employees act outside of their scope of employment and commit personal offenses, the Legislature should act accordingly.

More recently, a panel of this Court in *Bozarth, supra,* addressed the vicarious liability issue. The operative facts arose out of alleged homosexual attacks upon plaintiff's son by his teacher. As in *Galli,* plaintiff alleged that defendant school board was vicariously liable under the doctrine of *respondeat superior.* Relying on Justice COLEMAN's opinion in *Galli* and Justice KAVANAGH's opinion in *McCann,* the panel found that homosexual assaults were clearly outside the scope of the teacher's employment. Therefore the *respondeat superior* doctrine did not apply so as to subject the governing school board to liability. The panel stated that the proper application of the principle of liability enunciated in 1 Restatement Agency,

2d, § 219(2)(d), cited in *McCann*, is limited to situations where, from the viewpoint of the person being harmed, the agent appears to have been acting within the scope of his employment.

In Michigan, no court has found a school district to be vicariously liable for the acts of its employees. However, I perceive a trend in this state to limit severely governmental immunity. No majority of our Supreme Court has found *respondeat superior* to be inapplicable to school districts. Therefore, I would hold that the protection afforded a school district under the governmental immunity statute does not extend to liability under the doctrine of *respondeat superior.*

Thus, in this case, the issue becomes whether any factual development of plaintiff's allegations under Count III could justify recovery against defendant school district under the doctrine of *respondeat superior.* In looking at the facts pled in a light most favorable to plaintiff, I find that the complaint contained allegations which, if proven, would properly allow the factfinder to determine that torts were committed by the school district's employee who was acting within the apparent scope of his authority. It is possible to distinguish the homosexual attacks at issue in *Bozarth,* which were obviously outside the scope of a teacher's employment, and the allegations made in plaintiff's complaint. A teacher may use reasonable physical force on a student for the purpose of maintaining proper discipline. MCL 380.1312(2); MSA 15.41312(2). Becker's actions, from the viewpoint of the plaintiff's son, reasonably could have been viewed as occurring within the scope of the teacher's employment and apparent authority. Thus, the granting of summary judgment on Count III was in error.

I am not persuaded that this line of reasoning renders the governmental immunity statute useless since claimants need only plead vicarious liability on the part of a school district for its employees' acts. A teacher's wrongful acts do not automatically impute the resulting liability to the school district. I conclude that a school district cannot be held liable solely because it employs a tortfeasor. The mere fact that an employee's employment situation may offer an opportunity for tortious activity should not make the employer liable to the victims of that activity. *Bozarth, supra,* 355.

Defendants superintendent and principal are not liable for the torts of a teacher under *respondeat superior.* Although Steudle and DeMarte may be authorized to appoint teachers, the person appointed is not the representative of the appointing employees but acts solely on account of the school district. Therefore, Becker is neither a subagent nor subservant of Steudle and DeMarte. Hence they cannot be vicariously liable.

In summary, the trial court properly granted summary judgment in favor of the school district for its alleged negligence in the screening, hiring, and supervision of Becker. I disagree with the majority and would hold that summary judgment in relation to the principal's and superintendent's alleged negligence is incorrect. Lastly, I find that vicarious liability could lie against the school district, but not the other defendants, under the doctrine of *respondeat superior.*

I would affirm in part, reverse in part, and remand for trial.